**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| LILIAN ORELLANA, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Case No.: PWG-20-2795 |
| | * | |
| DON POLLO OF BETHESDA, INC., *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

On September 25, 2020, Plaintiff Lilian Orellana filed this action against her former employer, Don Pollo of Bethesda, Inc. and its owner, Farzi Shargi Namin (collectively, "Defendants") alleging that Defendants improperly classified her as a managerial employee and therefore, improperly denied her overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, La. & Empl. Art., § 3-501 *et seq.* Compl., ECF No. 1. On April 6, 2021, the Plaintiff moved, with Defendants' consent, for court approval of the settlement agreement they have executed. Consent Mot., ECF No. 9. I have reviewed the filings in this case including the Complaint and Answer, the motion, and the settlement agreement, and find that a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). I find that the net amount Ms. Orellana is to receive to be fair and reasonable in light of the facts of this case. Additionally, I approve the attorneys' fee award under a lodestar calculation.

## BACKGROUND

Ms. Orellana worked at Don Pollo from 2009 through approximately August 12, 2020. Compl. ¶ 9.  She alleges that she was a kitchen laborer, primarily preparing and cooking food, delivering food to customers, and cleaning the kitchen area.  *Id.* at ¶¶ 10-11.  Defendants, however, assert that during the three years prior to this lawsuit, Ms. Orellana's was not employed as a laborer but as a manager, for which she was paid a salary with health insurance.  Answer ¶ 10, ECF No. 4; Consent Mot. 1-3.  Ms. Orellana alleges that she is owed approximately $18,781 in overtime wages, Compl. ¶ 17, but Defendants argue that she was an exempt employee to whom they were not required to pay overtime wages, Consent Mot. 1-3.

After exchanging substantial written discovery, the parties agreed to enter into settlement discussions rather than incur the costs of depositions.  Consent Mot. 2.  The parties eventually entered into a settlement agreement under which Ms. Orellana will be paid a lump sum of $17,167, comprised of $10,000 in wages and damages and $7,167 in attorneys' fees and costs.  *Id.*; Settlement Agmt. 2.  The parties now seek the Court's approval of the settlement agreement. Consent Mot. 2.

## STANDARD OF REVIEW

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman v. LBDP, Inc.*, No. DKC-

12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [her] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

## DISCUSSION

### I.    Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Consent Motion makes clear that the parties dispute the core factual issue in the case: whether Ms. Orellana was an exempt employee such that she was not entitled to overtime wages. Consent Mot. 2-3.

## II.      Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

Here, the parties engaged in informal written discovery, reviewing the records and analyzing the claims based on those records.  Consent Mot. 3.  Prior to beginning a week of depositions, the parties agreed that the cost involved in proceeding did not make sense in light of the amount in dispute and the financial hardships facing the restaurant industry and its workers at this time.  *Id.* at 2-3.  The parties also considered that a trial would be necessary.  *Id.* at 3.  The parties' counsel represent that there was no fraud or collusion in reaching the settlement.  *Id.* I accept these representations by experienced counsel and am satisfied that no fraud or collusion contributed to the parties' decision to settle the claims.  Additionally, the parties have established counsel's experience with FLSA cases.  *See id.* at 4.  The fifth factor is not relevant here as it pertains to class actions.  *See Lomascolo*, 2009 WL 3094955, at *10.

With regard to the sixth factor, Ms. Orellana sought a minimum of $18,781 in overtime wages and also sought liquidated damages, attorneys' fees, and costs.  *See* Compl. ¶¶ 17, 42, 50.  To receive liquidated damages, Ms. Orellana would have had to prove that the failure to pay the disputed wages was not the result of a "good faith" belief that the FLSA did not require such payment. 29 U.S.C. § 260.  Given the *bona fide* disputes in this case there is a "possibility that, even if liability were found, Plaintiff may not be entitled to additional liquidated damages." *Berrios*

*v. Green Wireless, LLC*, No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016). Under the circumstances—the risks of litigating the case; the risks of being able to collect even if she were to prevail given the current economic challenges facing the restaurant industry; the size of the potential recovery; and the value of money in Ms. Orellana's pocket now—her counsel has expressed his belief that the settlement is in the best interests of his client.  Consent Mot. 4.  I find that it is reasonable for Ms. Orellana to settle for a collectible amount now instead of proceeding to trial to potentially recover a larger amount that may be uncollectible.

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint.  Settlement Agmt. ¶¶ 2-3.  A general release like this can render settlement agreements unreasonable.  *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims.  *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)).  The agreement compensates Ms. Orellena for more than 50% of her claims for unpaid wages.[1]  This percentage fairly compensates the Plaintiff for the general release executed given the *bona fide* disputes and stage of the case.

---

[1]      Payment of a lump sum of $10,000 represents 53.2% of her claim of $18,781 unpaid wages.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014) (citing, *inter alia*, *Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). But *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945), on which these courts rely, did not "involve[] a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA." *Duprey*, 30 F. Supp. 3d at 410 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002)). In the absence of clear binding authority to the contrary, however, when there are "*bona fide* disputes as to liability and the costs and risks of proceeding on the merits" a plaintiff "is permitted to agree that . . . accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* This settlement, like the one in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.*

Accordingly, I find that the amount provided in consideration for the release is fair and reasonable.

## III.    Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. In calculating an award of attorneys' fees, the Court first must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an

award" (internal citations omitted)).  "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)."  *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted).  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19).  However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'"  *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same).  In Appendix B to its Local Rules, available at http://www.mdd.uscourts.gov/local-rules, this Court has established rates that are presumptively reasonable for lodestar calculations.  *See, e.g., Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D.

494, 509 (D. Md. 2000). The billing rates listed for Plaintiff's two attorneys ($225-$350) and the paralegal(s) ($100) are within the presumptively reasonable rates set forth in Appendix B of this Court's Local Rules.  The parties note that the rates are below those in the District of Columbia market where the attorneys' firm is based.  I find that these rates are reasonable.

As for the hours expended, the motion includes information listing the billable hours that the attorneys and paralegal(s) spent on this matter. Consent Mot. 5-6.  The attorneys worked a total of 20.6 hours on this case, and the paralegal(s) and support staff worked 16 hours.  *Id.*  At $250 per hour billing rate for the attorneys and $100 per hour for the paralegal(s), the total represents $6,750. Counsel notes that the firm also advanced $500 in filing fees and service costs.  *Id.* at 6. The parties agreed to a payment of $7,167 in fees and costs, which is a separate payment from the $10,000 to be paid to Ms. Orellana. *Id.* at 2.

Taking into account the period of litigation, which included discovery and preparation for a settlement conference, I find that $7,167 for fees and costs is reasonable. Accordingly, I will approve the attorneys' fee award.

## ORDER

Accordingly, it is this <u>28th</u> day of May, 2021, hereby ORDERED that:

1. The Consent Motion to Approve Settlement Agreement, ECF No. 9, IS GRANTED;

2. The Confidential Settlement Agreement and Release, ECF No. 9-1, is APPROVED; and

3. The Clerk is DIRECTED to CLOSE THE CASE.


_____/S/_____
Paul W. Grimm
United States District Judge